UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLOTTE M. BUCKNER,

    Plaintiff                                     Civil Action No. 06-13710

v.                                           HON. VICTORIA ROBERTS
                                             U.S. District Judge
                                             HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Charlotte M. Buckner brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

## PROCEDURAL HISTORY

On December 10, 2003, Plaintiff filed an application for DIB, alleging an onset of disability on June 15, 2002 (Tr. 51-53). After the initial denial of her claim, Plaintiff filed

a timely request for an administrative hearing, held on April 12, 2003 before Administrative Law Judge (ALJ) Frederick McGrath. Plaintiff, represented by attorney Ronald B. Burda, testified, as did Barbara Marie McGinty, and vocational expert ("VE") Samuel R. Goldstein (Tr. 163-178, 178-180, 180-187). On February 28, 2006, ALJ McGrath determined that Plaintiff was able to perform her past relevant work as an inventory worker, finding further that Plaintiff retained the residual functional capacity to perform a significant range of other work at the light and sedentary exertional levels (Tr. 17-18). On August 11, 2006, the Appeals Council denied review. Plaintiff filed for judicial review of the final decision on August 21, 2006.

## BACKGROUND FACTS

Plaintiff, born March 17, 1954, was just short of 52 when the ALJ issued his decision (Tr. 18, 51). She graduated from high school and later attended truck driving school (Tr. 164). She worked previously as an assembler and inventory worker (Tr. 167). Plaintiff alleges an onset date of June 15, 2002 due to degenerative disk disease and rheumatoid arthritis (Tr. 64).

### A. Plaintiff's Testimony

Plaintiff testified that she had graduated from high school and had more recently completed a six-week truck driving course (Tr. 164). After finishing high school, Plaintiff reported working for Allied Signal as an assembler, estimating that the job required her to lift up to 80 pounds (Tr. 164-165). She indicated that after the plant closed in 1998, she obtained work which required her to perform truck driving, stock work, and cleaning, adding

that she quit after only one month (Tr. 165). She reported that her next job as a truck driver also lasted only one month (Tr. 166). She testified that she then worked for six months as an inventory worker followed by a shipping and receiving job which required heavy lifting and forklift driving (Tr. 167-168).

Plaintiff, 268 pounds, testified that she had recently lost 15 pounds by avoiding carbohydrates (Tr. 168). She reported that she currently took Celebrex for symptoms of arthritis (Tr. 169). In addition to lumbar spine problems, Plaintiff alleged migraine headaches and neck problems (Tr. 169).

*Plaintiff's counsel requested that the record reflect that his client had reclined on the floor during a hearing recess in an attempt to relieve her pain* (Tr. 170-171).

Plaintiff testified that she spent the majority of her waking hours in bed, arising only to shower or eat (Tr. 171). She reported experiencing migraine headaches "all the time," adding that the headaches sometimes lasted for up to a week at a time (Tr. 171). She also reported symptoms of acid reflux, hip and leg pain, right leg numbness, muscle cramps in her calves and ankles, and foot pain (Tr. 172). Plaintiff alleged alternating constipation and diarrhea along with urinary incontinence (Tr. 173).

Plaintiff testified that she lived in a small condominium with her mother (Tr. 173). She testified that she drove only to doctors' appointments, but continued to bathe and groom herself (Tr. 174). She reported preparing simple meals and performing light housekeeping tasks on an intermittent basis (Tr. 174). Plaintiff testified that she enjoyed playing word search games and reading (Tr. 175). She indicated that she socialized on an occasional basis

with a friend who lived within walking distance (Tr. 175). Plaintiff indicated that she was currently attempting to give up smoking (Tr. 175).

Plaintiff testified that since her onset of disability she had received only minimal treatment due to financial limitations (Tr. 176). She alleged that she declined back surgery available through a state-subsidized program due to the fear that she would end up in a wheelchair (Tr. 177). Stating that she was unable to afford physical therapy, she reported attempting physician-prescribed exercises at home (Tr. 177).

### B. Witness Barbara Marie McGinty

Ms. McGinty testified that she had known Plaintiff for 13 years, adding that they had been coworkers for ten years (Tr. 178-179). McGinty characterized Plaintiff as a "hard worker" with a good attendance record (Tr. 179). McGinty reported that since the onset of Plaintiff's condition she "was not the same person," noting Plaintiff was "always in bed" as a result of back pain or migraine headaches (Tr. 179). McGinty stated that at a recent family gathering, Plaintiff's discomfort obliged her to lie down immediately after eating (Tr. 180).

### C. Medical Evidence

### i. Treating Sources

In May 2000, treating records created by Eagle Family Medicine indicate that Plaintiff had previously received a prescription for Celebrex, noting also that Plaintiff could not document a past diagnosis of rheumatoid arthritis (Tr. 131). The next month, Peter M. Levitin, M.D., evaluated Plaintiff for arthritis, finding the absence of joint limitations (Tr. 99). Levitin declined to diagnose Plaintiff with arthritis, opining instead that her discomfort

might be attributable to fibromyalgia (Tr. 99). He recommended the continued use of Celebrex (Tr. 99).

In November 2000 Plaintiff sought treatment for foot pain, asking for a referral to a podiatrist (Tr. 130). The next month, Jeffrey A. Petrinitz, D.P.M., observed that radiographs showed large inferior calcanial spurs, opining further that Plaintiff would eventually require "joint arthroplasty with implant" (Tr. 101). June 2001 treating notes indicate that Plaintiff was evaluated for arthritis, but did not receive a "specific" diagnosis (Tr. 129). The report noted further that Plaintiff had been advised to undergo bilateral foot surgery (Tr. 129). In January 2002, Plaintiff requested an increased dose of Celebrex due to worsening symptoms in the winter (Tr. 128). In March 2002, Plaintiff reported increased lower back pain (Tr. 126). In April 2002 she also reported left side numbness (Tr. 125). The next month, Plaintiff sought emergency treatment for pancreatitis (Tr. 123). Plaintiff was prescribed a bland diet along with a restriction on fatty foods (Tr. 116). June 2002 treating notes indicate that Plaintiff experienced improvement (Tr. 119).

An April 2002 MRI of Plaintiff's lumbar spine showed grade one spondylolisthesis and bilateral spondylolysis at the L4-5 level with moderate bilateral neuroforaminal narrowing at L4-5 (Tr. 135). An August 2004 MRI showed a right paracentral herniation at L5-S1 affecting the right nerve root, along with "grade I spondylolisthesis at L4/L5 with central herniation and pressure on the subarachnoid space" (Tr. 145). In November 2004, Taras Lisowsky, D.O., opined that "the prognosis for [Plaintiff's] low back is poor," noting that Plaintiff had declined a neurosurgical consultation (Tr. 143A). Lisowsky found that

Plaintiff was limited to 15 minutes of sitting and five minutes of walking due to obesity and back pain (Tr. 143A). Treating source notes created in April 2005 indicate that Plaintiff continued to experience neck, back, and toe pain (Tr. 146).

### ii. SSA Consulting and Non-examining Sources

In January 2004, Stephen M. Miller, M.D., performed a consultive exam on behalf of the SSA (Tr. 138-145). Miller noted that Plaintiff complained that chronic back pain was exacerbated by "walking, standing or prolonged sitting," noting further that "an episode of pancreatitis in the past" had been resolved (Tr. 138). Characterizing a recent weight gain as "significant," Miller opined that Plaintiff's range of motion was "probably limited more by her size than by the pain" (Tr. 139-140). Plaintiff brought a cane to her appointment but did not use it, reporting that she needed it for climbing and descending stairs (Tr. 140). Miller found the presence of chronic low back pain secondary to degenerative disc disease, bilateral foot pain, and left leg numbness, concluding that Plaintiff "has some significant limitations in her lifestyle probably secondary to her obesity" (Tr. 140).

A February 2004 Residual Functional Capacity Assessment found that Plaintiff retained the ability to lift 20 pounds occasionally, 10 pounds frequently, stand, walk, or sit for six hours in an eight-hour workday, and unlimited pushing and pulling abilities (Tr. 89). The report found the absence of postural, manipulative, visual, communicative, or environmental limitations (Tr. 90-92).

### D. Vocational Expert Testimony

VE Samuel Goldstein classified Plaintiff's past relevant work as an assembler as

unskilled at the medium to heavy exertional level; inventory work as unskilled and exertionally light; and work as a hi-lo driver and warehouse stock worker as semi-skilled and exertionally medium or heavy (Tr. 181). The ALJ posed the following question:

> "If I was to assume an individual who was limited to same age, education, work background as the claimant limited to light work with no climbing ladders, ropes or scaffold, the inventory worker which job would be in existence for such an individual, is that correct?"[1]

(Tr. 182). The VE found that given the above limitations, approximately 1,500 jobs existed in the tri-county metropolitan Detroit area which entailed performing Plaintiff's past relevant work as an inventory worker (Tr. 182). The VE testified that given the above restrictions, the hypothetical individual could also perform the exertionally light work of packing (6,000-7,000 jobs), visual inspection (4,000), and assembly (12,000). The VE stated that if the hypothetical limitations were to include a sit/stand option, such an individual would be limited to sedentary work (Tr. 183). He indicated that if the above hypothetical restrictions included *sedentary* work only, such an individual would nonetheless retain the ability to perform the work of a bench inspector (2,500), packager (3,500), assembler (6,000-7,000), and telephone answering service clerk (3,500) (Tr. 184). The VE concluded his testimony by stating that a limitation allowing the individual to lie down at unscheduled times would preclude all employment (Tr. 185).

### E. The ALJ's Decision

On February 28, 2006, ALJ McGraith determined that Plaintiff was not disabled (Tr.

---

[1]The hypothetical question was copied verbatim from the hearing transcript.

17). He found that although she experienced the severe impairments of back pain, obesity, and foot pain, based on the requirements of 20 C.F.R. § 404.1521, none of her conditions met or medically equaled one of the impairments found in Part 404 Appendix 1 Subpart P, Regulations No. 4 (Tr. 15).

Finding that Plaintiff was able to perform her past job as an inventory worker, the ALJ found that she retained the residual functional capacity ("RFC")

> "to perform light work that does not involve any climbing of ladders, ropes, or scaffolds. She is able to lift and carry twenty pounds occasionally and ten pounds frequently. In an eight-hour period, the claimant is able to sit or stand/walk for a total of six hours each"

(Tr. 15). Adopting the VE's job findings, the ALJ also concluded that in addition to inventory work, Plaintiff retained the ability to perform a significant range of light and sedentary work (Tr. 17-18).

ALJ McGraith found Plaintiff's allegations of limitations "not generally credible," pointing out that "claimant has not had any surgeries or emergency room visits since her alleged onset date despite allegations of disabling level of pain" (Tr. 16). He noted further that Plaintiff's claims were undermined by her lack of "regular or consistent treatment" (Tr. 16).

### STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more

than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

### **FRAMEWORK FOR DISABILITY DETERMINATIONS**

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she

can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### Credibility

Plaintiff contends that the ALJ impermissibly discounted her allegations of limitation, which she maintains are supported by treating records. *Plaintiff's Brief*, 9-13. In addition, she argues that the ALJ erroneously cited her lack of aggressive treatment in support of his non-disability finding while failing to consider that the absence of regular or aggressive treatment was attributable to her financial limitations. *Id.* at 12; SSR 96-7p.

The credibility determination is guided by SSR 96-7p, which describes a two-step process for evaluating symptoms. *See Duncan v. Secretary of Health and Human Services,* 801 F.2d 847, 853 (6th Cir. 1986). "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment . . . that can be shown by medically acceptable clinical and laboratory diagnostic techniques." Second, SSR 96-7p mandates that:

> "the adjudicator must evaluate the intensity, persistence, and limited effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective

medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

*Id.*

SSR 96-7p also requires that before making a credibility determination, the ALJ

"must not draw any inferences about . . . the failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment"

*Id.*

Plaintiff argues correctly that in making a credibility determination, the ALJ must consider whether the lack of treatment is attributable to financial or logistical problems. However, in the present case, record evidence supports the reasonable inference that her failure to pursue aggressive treatment was not due to monetary limitations, but rather to lack of symptomology. Although Plaintiff testified at hearing that financial problems prevented her from seeking treatment, she later acknowledged that back surgery was available under a state-subsidized program (Tr. 177). In November 2004, Dr. Lisowsky also noted that Plaintiff had declined an offer of a neurosurgical consultation, specifically requesting only conservative treatment (Tr. 143A).[2] Similarly, neither a podiatrist's December 2000 recommendation of foot surgery (Tr. 101) nor followup notes by regular treating sources (Tr. 129) suggests that financial problems prevented Plaintiff from seeking appropriate treatment.

---

[2]The same report states that Plaintiff's "insurance constraints" prevented her from attending "formal physical therapy," but notes that Plaintiff had been prescribed exercises to perform at home.

In addition, although Plaintiff stated that she also refrained from surgery due to her fear that she would end up wheelchair-bound due to surgical errors, the ALJ was entitled to reject this account on the basis that it stood at odds with her claim that she was already bedridden for most of her waking hours. Further and more importantly, record evidence shows a complete absence of any support for the contention that surgery would leave her unable to walk. Indeed, as discussed above, Plaintiff refused even a consultive examination with a neurosurgeon (Tr. 143A). In the face of substantial evidence supporting the ALJ's findings, the great latitude generally according an ALJ's credibility determination is appropriate here. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir. 1993).

For the same reasons, the ALJ's finding that Plaintiff retained the ability to perform exertionally light work, supported by substantial evidence, does not present grounds for remand. Despite Witness McGinty's testimony that Plaintiff needed to lie down frequently (Tr. 180), lumbosacral range of motion studies performed by a consultive physician in January 2004 showed "essentially normal" results (Tr. 140). Notes from the same exam indicate that she demonstrated heel and toe walking "demonstrating no weakness" (Tr. 140). Likewise, in July 2000, Plaintiff reported to Dr. Levitin that she actually obtained relief from walking (Tr. 95). Plaintiff acknowledged that she continued to drive, prepare meals, perform light housekeeping chores as well as bathe and groom herself (Tr. 174-175). While pursuant to *Walston v. Gardner,* 381 F.2d 580, 586 (6th Cir. 1967), such activities performed only intermittently do not alone establish non-disability, in the present case, Plaintiff's

acknowledgment that she continued to drive herself to appointments and rode as a passenger on shopping trips, along with regular self-help activities, at the very least casts doubt upon her claim that she was disabled to the extent that she spent most of her day in bed. Further, although Dr. Lisowsky opined that Plaintiff was unable to sit for more than 15 minutes at a time, Plaintiff's own admission that she continued to drive herself to her doctors appointments and accompany her friend on shopping trips implies that she could sit for an excess of 15 minutes on a regular basis. Lisowsky's conclusion also stands at odds with a February 2004 Residual Functional Capacity Assessment showing that Plaintiff could sit for six hours in an eight-hour work period (Tr. 89). Pursuant to *Wilson v. Commissioner of Social Security,* 378 F. 3d 541, 544 (6th Cir. 2004), the ALJ was entitled to reject Lisowsky's opinion based on its inconsistency with other record evidence.[3]

In closing, this Court's finding that the administrative decision should be upheld is not intended to trivialize legitimate limitations as a result of back, neck, and foot problems. However, based on a careful reading of this record, the ALJ's decision is within the "zone of choice" accorded to the fact-finder at the administrative level. Pursuant to *Mullen v. Bowen*, *supra*, the ALJ's decision should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment be GRANTED, and that Plaintiff's Motion for Summary Judgment be DENIED.

---

[3]Further, Lisowsky's November, 2004 report indicates that she had only begun treating Plaintiff in June, 2004, well after Plaintiff applied for DIB (Tr. 143A).

Any objections to this Report and Recommendation must be filed within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

S/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: June 25, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served on the attorneys and/or parties of record by electronic means or U.S. Mail on June 25, 2007.

                                                  S/Gina Wilson
                                                  Judicial Assistant