**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**CHARLOTTE M. BUCKNER,**

**Plaintiff(s),**

**CASE NUMBER: 06-13710**
**HONORABLE VICTORIA A. ROBERTS**

**v.**

**COMMISSIONER OF SOCIAL SECURITY**,

**Defendant(s).**
________________________________/

**ORDER**

## I. INTRODUCTION

This matter is before the Court on the parties' cross Motions for Summary Judgment. Magistrate Judge R. Steven Whalen recommends that the Court GRANT Defendant's motion (Doc. #15) and DENY Plaintiff's motion (Doc. #10). The Court **ADOPTS** Magistrate Whalen's recommendation (Doc. #17).

## II. PROCEDURAL HISTORY AND FACTS

Magistrate Whalen adequately summarizes the relevant facts and procedural history. His summary is incorporated here.

## III. STANDARD OF REVIEW

In the Social Security context, the district court reviews the decision of the Commissioner for a determination of whether the decision exceeds statutory authority or is arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990); *Bowen v. Yuckert*, 482 U.S. 137, 145 (1987). This Court must review the ALJ's decision to determine

whether it is supported by “substantial evidence.” “Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.” *Brainard v. Secretary*, 889 F.2d 679, 681 (6th Cir. 1989) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). This standard presupposes that there is a “zone of choice” within which the Administrative Law Judge (“ALJ”) may make a decision without being reversed. *Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994). In other words, if the Commissioner’s determination is supported by substantial evidence, it must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently. *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). The Court must only review the record that was before the ALJ and cannot review the evidence *de novo*, weigh the evidence, or make credibility determinations. *Id.*

## IV. ARGUMENTS

There are five factors that the Social Security Administration uses to determine eligibility for benefits. Plaintiff must establish that: (1) she is not presently engaged in gainful employment; (2) she suffered from a severe impairment; and (3) the impairment met or was medically equal to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 and was of sufficient duration. If Plaintiff does not meet her burden at step three, she may still meet her burden at step four by proving she did not have the “residual functional capacity” (“RFC”) to perform past work. *Jones v. Comm’r of Soc.*

*Security*, 336 F.3d 469, 474 (6th Cir. 2003).

If Plaintiff satisfies her burden, the burden shifts to the Commissioner for the fifth factor to show that there is other work available in the economy that the claimant can perform. 20 C.F.R. §§ 404.1520(b)-(f). To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987). This substantial evidence may be in the form of Vocational Expert ("VE") testimony, but only if the hypothetical question posed to the expert accurately portrays the claimant's individual physical and mental impairments. *Id.*

**A. Plaintiff's Claims**

Plaintiff Charlotte Buckner seeks disability benefits from June 15, 2002, claiming disability due to degenerative disc disease and rheumatoid arthritis in her feet. Plaintiff's past work experience includes employment as an assembler, stock person, truck driver, inventory specialist, and shipper/receiver.

Plaintiff claims she only gets out the bed to go to the bathroom, take a shower, or eat. Tr. 171. She cannot sit or stand five minutes before she is in pain. Plaintiff states she tries to stop the pain when she sits down by moving around, but it does not help. Although she "catnaps," the pain prevents her from sleeping. Plaintiff claims the pain started on her left side, but now affects her right side. Tr. 172. Plaintiff's attorney noted that she had to lay down during the hearing because she was in pain. Tr. 170-171. Plaintiff claims that she has pain in her neck, spine, hip, legs, ankles, feet, and stomach. She also has migraine headaches and trouble with her bowels. Tr. 169, 171-173.

Plaintiff claims the pain in her neck affects other parts of her body. She claims to

have soreness in her shoulders, upper back, and chest from the vertebras in her neck. Tr. 171-172. Plaintiff states she takes a muscle relaxer to relieve the pain. Tr. 169. Plaintiff also claims that she has numbness in her legs, muscle cramps in her calves and ankles, and arthritis in her ankles and feet. Plaintiff claims that when she tries to walk, her feet hurt "really bad." And, she is in "excruciating pain" if she moves her feet the wrong way. Tr. 172.

Plaintiff claims she has problems with her stomach. Plaintiff states she takes pills for her "real[ly] bad" acid reflux. She gets acid reflux if she even drinks water without taking the pills. She also has a knot and sharp pains in the left side of her stomach. Tr. 172. In addition, Plaintiff claims she gets migraine headaches all the time that can last a week. Plaintiff states that she gets sores on her head from the migraines that prevent her from laying her head down. Tr. 171.

Plaintiff also claims that she has problems with her bowels. She cannot predict when she will be constipated or when she will have diarrhea. When she gets diarrhea, she has to go to the bathroom "that very second." She also wears protective undergarments everyday because of urinary incontinence. Tr. 172-173.

Despite her problems, Plaintiff testified that she can do the following: (1) drive (although she only goes to her doctor's office and her friend's house); (2) bathe and dress, but it takes her a long time; (3) dust her room when she can sit on the edge of the bed long enough; (4) cook, but she mainly eats sandwiches and microwaveable foods; and (5) anything laying in the bed such as word search puzzles (although she gets blurred vision when she tries to read). Plaintiff stated her mother cleans the house. Tr. 174-175.

Plaintiff testified that since her alleged onset date of disability, she has only been on medications. She has not had any surgery, physical therapy, or hospitalization. Plaintiff states she did not have the money for treatment in North Carolina, and her state medical assistance in Michigan did not cover physical therapy. Plaintiff declined back surgery because her doctor could only provide her with a 50/50 chance of success. She testified that she knows people who ended up in a wheelchair after having back surgery. She was afraid of becoming one of those people. Plaintiff stated she was given physical therapy exercises to do at home while laying in the bed, but they did not work. Tr. 176-177. She also began seeing a new doctor and agreed to see a chiropractor. Tr. 177-178. In addition, she recently stopped smoking. Tr. 175.

Plaintiff's friend of 13 years, Barbara McGinty testified at the hearing. Tr. 178. She stated that Plaintiff was a "very hard worker, on the go all the time" before her medical problems. Now, she is always in the bed because she is in pain. Tr. 179. However, she does take short trips with Plaintiff to the grocery store. Plaintiff gets a motorized cart, but she cannot sit it in very long. She also has to drop Plaintiff off at the door. Ms. McGinty testified that at Easter dinner, Plaintiff was fidgety at the table and had to lay down because she could not sit any longer. Tr. 180.

**B. Magistrate's Recommendation**

To determine the range of suitable alternative jobs available for persons with Plaintiff's limitations, the ALJ asked the VE to assume an individual of Plaintiff's age, education, and work background who is limited to light work; and cannot climb ladders, ropes, or scaffolds. The VE testified that such an individual could perform Plaintiff's past job as an inventory worker (1,500 jobs regionally). The VE testified that such

individual could also work as a light-level packer (6,000-7,000 jobs regionally), unskilled visual inspector (4,000 jobs regionally), or light-level assembler (12,000 jobs regionally). Tr. 183.

The hypothetical was modified to include a sit/stand option, but the individual would only be allowed to sit or stand in 30 minutes intervals. This eliminated all jobs at the light, unskilled level. The VE testified that such individual is limited to sedentary work. Tr. 183-184.

The ALJ changed the hypothetical to a person who cannot climb ladders, ropes, or scaffolds and was limited to unskilled, sedentary work. The VE testified that such individual could work in a bench-work occupation. This includes a bench inspector (2,500 jobs regionally), bench packager (3,500 jobs regionally), and bench assembler (6,000-7,000 jobs regionally). Such individual could also work in an entry-level telephone oriented occupation. This includes a telephone answering service clerk, some forms of reception on message takers, and a tele-surveyor. There are a total of 3,500 telephone oriented jobs regionally. Tr. 184.

The ALJ then made the hypothetical individual a person of Plaintiff's age with the same educational and work backgrounds as Plaintiff who is limited to sedentary work and only able to sit/stand for five to 15 minutes at a time. In addition, this person would have to lay down on the floor at unscheduled times due to pain. The VE testified that these limitations were work preclusive. Tr. 185.

The ALJ determined that Plaintiff's back problems, feet problems, and obesity were "severe" based on the requirement in 20 C.F.R. §404.1520(c). Nonetheless, the ALJ determined that Plaintiff does not have an impairment or combination of

impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. He concluded that Plaintiff retains the RFC to sit, stand, and walk for a total of six hours each in an 8-hour period, lift and carry 20 pounds occasionally and ten pounds frequently; and perform light work that does not involve climbing ladders, ropes, or scaffolds. The ALJ also concluded that Plaintiff is capable of performing her past work as an inventory worker at the light exertional level. Hence, the ALJ concluded that Plaintiff was not under a “disability” as defined in the Social Security Act.

The Magistrate recommends that the Court uphold the ALJ’s decision. He states the decision is within the “zone of choice” accorded the fact-finder at the administrative level. The Magistrate recognized the following: (1) the ALJ must consider whether a claimant’s lack of treatment is attributable to financial problems; (2) Plaintiff testified that financial problems prevented her from seeking treatment; and (3) a letter from Dr. Taras Lisowsky reports that Plaintiff was unable to attend formal physical therapy due to insurance constraints. However, he concluded that Plaintiff’s financial problems did not prevent her from seeking the appropriate treatment. Instead, the Magistrate opined that Plaintiff’s failure to pursue treatment was due to lack of symptomology. In support of his argument, the Magistrate noted the following: (1) Plaintiff acknowledged that back surgery was available under a state-subsidized program; (2) Plaintiff was given home physical therapy exercises; (3) Dr. Lisowsky reported that Plaintiff declined neurosurgical consultation and requested only conservative treatment (formal physical therapy, daily Celebrex, and continued weight loss); (4) a podiatrist recommended “joint arthroplasy with implant” and did not include anything regarding unavailability due to

financial problems; and (4) treatment notes did not indicate that Plaintiff's request for bilateral foot surgery was unobtainable due to financial problems.

While the Magistrate noted it would be erroneous for an ALJ to conclude that a claimant is not disabled simply because she performs basic functions, *See Walston v. Gardner*, 381 F.2d 580, 586 (6th Cir. 1967), he contends that Plaintiff's ability to drive, prepare meals, dust her room, bathe and groom herself, and engage in regular self-help activities casts doubt on her claim that she is disabled. He also argues that Plaintiff's ability to drive herself to appointments and ride as a passenger on shopping trips implies that she can sit for more than 15 minutes on a regular basis. The Magistrate concludes the ALJ was entitled to reject Dr. Lisowsky opinion that Plaintiff was unable to sit for more than 15 minutes at a time because it is inconsistent with the record evidence. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004).

The Magistrate also argues that substantial evidence supports the ALJ's conclusion that Plaintiff can stand and walk for six hours in an 8-hour period. An RFC assessment determined that she could stand and/or walk with normal breaks for a total of about six hours in an 8-hour workday. Tr. 89. Plaintiff's evaluation on January 15, 2004 at the North Carolina Department of Health and Human Services indicated that her range of motion of the lumbosacral spine was "essentially normal." This same document indicated that Plaintiff's ability to walk on her heels and toes demonstrated no weakness. Tr. 140.

In addition, the Magistrate stated that the ALJ was entitled to reject Plaintiff's argument that she declined back surgery due to her fear that she would end up in a

wheelchair. He contends her "fear" is at odds with her own testimony that she stays in bed most of the day anyway.

**C. Plaintiff's Objections**

Plaintiff seeks reversal. Plaintiff states that Social Security Ruling 82-59 provides that a justifiable cause for failure to follow prescribed treatment is a claimant's inability to afford prescribed treatment. Hence, an ALJ must consider this situation when intensive treatment or therapy has not been undertaken. Plaintiff argues that the minimal amount of treatment she received was justifiable due to her financial limitations. *See McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir. 1990) (holding that "the severity and disabling nature of a condition must be evaluated without regard to remediability if the claimant has no means to pay for remedial treatment"); *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[w]e agree with every other circuit that has considered the issue that poverty excuses noncompliance"); *Holloway v. Heckler*, 607 F.Supp. 71, 73-74 (D. Kan. 1985) ("[t]he ALJ . . . failed to consider that [plaintiff] could not afford to pay for her own psychiatrict [sic] evaluations"); *Lovejoy v. Heckler*, 790 F.2d 1114, 1117 (4th Cir. 1986) (finding it erroneous to reach a conclusion that a claimant is not disabled because she failed to follow prescribed treatment when such failure is justified by lack of funds); *Waller v. Chater*, 1995 WL 538944 at *2 (10th Cir. Sept. 1, 1995) ("[a] claimant will not be denied disability benefits because [she] is financially unable to obtain treatment") (citing *Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985) and *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)).

Plaintiff asserts that fear of surgery is another justifiable cause for failure to follow prescribed treatment. *See* Social Security Ruling 82-59. Hence, the ALJ was not

entitled to reject her argument that she declined back surgery due to fear of ending up in a wheelchair.

Plaintiff also submits that her limited activities do not equate to the ability to perform work in a competitive work setting. Plaintiff cites Social Security Ruling 96-8p which states, “[R]FC is an assessment of an individual’s ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A ‘regular and continuing basis’ means 8 hours a day, for 5 days a week, or an equivalent work schedule.” Plaintiff argues that “[o]ccasional symptom-free periods-and even the sporadic ability to work-are not inconsistent with disability.” *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1995) (citing *Leidler v. Sullivan*, 885 F.2d 291, 292 n.3 (5th Cir. 1989) and *Poulin v. Bowen*, 817 F.2d 865, 875 (D.C. Cir. 1987)). And, a disability applicant does not have to be “completely helpless or bedridden to fall within the purview of the [Social Security] Act.” *Polly v. Gardner*, 364 F.2d 969, 975 (6th Cir. 1966) (quoting *Amick v. Celebrezze*, 253 F.Supp. 192, 195 (D.C.S.C. 1966)); *see also Walston*, 381 F.2d at 586 (noting that a claimant’s ability to perform simple functions such as driving and grocery shopping does not necessarily indicate an ability to engage in substantial gainful activity); *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (“[m]inimal daily activities . . . do not establish that a person is capable of engaging in substantial physical activity”) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (noting that the claimant’s daily activities were fairly restricted and not of the sort that necessarily undermines or contradicts a claim of disabling pain) (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)); *Higginbotham v. Califano*, 617 F.2d 1058, 1060 (4th Cir.

1980) (holding that the Secretary cannot rely on the fact that plaintiff can do housework and shop to discharge his burden of proof that plaintiff can do sedentary work); *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995) (holding that a claimant's ability to do light housework and visit with friends provides little or no support for a finding that a claimant can perform full-time competitive work) (citing *Harris v. Secretary of Health and Human Services*, 959 F.2d 723, 726 (8th Cir. 1992) and *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989)); *Cooper v. Bowen*, 815 F.2d 557, 561 (9th Cir. 1987) (finding evidence that claimant assisted with some household chores was not determinative of disability).

Plaintiff states the relevant inquiry is whether a claimant can spend a substantial part of her day engaged in the performance of physical functions that are transferable to a work setting. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("[m]any home activities are not easily transferable to . . . the . . . environment of the workplace, where it might be impossible to periodically rest or take medication.").

Further, Plaintiff notes that her medical condition deteriorated after the RFC assessment referenced by the Magistrate was done. She also states the assessment was issued prior to her 2002 and 2004 MRIs. An MRI of Plaintiff's lumbar spine was conducted on April 4, 2002 and confirmed moderate and bilateral facet degenerative joint disease and bone overgrowth at the L4-5 level. The L4-5 interspace was moderately narrowed and the disc showed loss of signal consistent with degenerative disk disease. Tr. 135. Another MRI was performed on Plaintiff's lumbosacral spine on August 30, 2004, which showed L5/S1 degeneration and a right paracentral disc herniation with pressure on the right side of the subarachnoid space and right nerve root. L4/L5 showed a Grade I spondylolistesis with disc space narrowing and a

herniated disc with some compression of the subarachnoid space at the herniation. Tr. 145.

Defendant did not file a response.

## V. ANALYSIS

The Court declines to reverse the ALJ decision. First, financial reasons were not the impediment to Plaintiff's failure to undergo medical treatment. While Plaintiff testified she lacked the financial means to obtain treatment in North Carolina, she also testified that she received state assistance in Michigan that only prohibited her from getting physical therapy. Plaintiff was prescribed physical therapy exercises to do at home to address that limitation. Tr. 176-177.

Second, Plaintiff's argument that she was justified in declining back surgery due to fear is not persuasive. Social Security Ruling 82-59 states that fear is a justifiable cause for failing to follow prescribed treatment, but it must be "so intense and unrelenting that it is, in effect, a contraindication to surgery. *If a treating source who had advised surgery later decides that the individual's fear is so great that the individual is not a satisfactory candidate for surgery, there is no issue of 'failure'* [to obtain medical treatment]." (Emphasis in original). Plaintiff testified that she knows people who ended up in a wheelchair after having back surgery. Tr. 177. She does not provide evidence from a treating physician that her fear was so great that she would not make a good candidate for surgery. Her testimony--without more--is insufficient to prove her fear was "so intense and unrelenting" that she justifiably declined back surgery.

Finally, Plaintiff's argument that her case should be reversed because her involvement in intermittent activities does not prove she can engage in substantial

gainful employment lacks merit.  Plaintiff is correct that an ALJ cannot use the fact that a claimant can participate in certain daily activities as conclusive evidence that she is not disabled.  However, the ALJ only mentioned her intermittent activities while providing a summary of the hearing testimony.  He did not base his decision that Plaintiff was not under a "disability" on the fact that she could perform some household chores, visit her friend, and go grocery shopping.  Instead, the ALJ concluded that Plaintiff could perform light and sedentary work based on the VE's testimony and "after careful consideration of the entire record."  This Court finds that his decision was not arbitrary and capricious and did not exceed statutory authority.

Noteworthy, the date when the RFC assessment was conducted is unclear.  However, assuming Plaintiff is correct in that it was prior to her 2002 and 2004 MRIs, her argument is still unpersuasive.  Even if the consultative physician who performed Plaintiff's RFC assessment did not have access to Plaintiff's 2002 and 2004 MRIs, the ALJ's decision was issued on February 28, 2006.  Hence, the ALJ had access to these records.  He still determined that Plaintiff retained the RFC to stand and walk for a total of six hours in an 8-hour period.

## VI.     CONCLUSION

The Court **ADOPTS** the Magistrate's Report and Recommendation.  The Court **GRANTS** Defendant's motion, and **DENIES** Plaintiff's motion.

**IT IS ORDERED.**

                                                  s/Victoria A. Roberts  
                                                  Victoria A. Roberts  
                                                  United States District Judge

Dated: September 13, 2007

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 13, 2007.

s/Linda Vertriest
Deputy Clerk